E-FILED
Friday, 16 April, 2021  03:32:13 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-CR-20035** |
| | ) | |
| **DAVID LEE GARCIA, JR.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER AND OPINION

Now before the Court is Defendant David Lee Garcia, Jr.'s Second Amended Motion for Compassionate Release ("Amended Motion"). ECF No. 102. For the reasons stated below, Defendant's Amended Motion is DENIED.

## Background

From 2012 through 2014, Defendant was involved in a drug conspiracy where the conspirators arranged for large quantities of cocaine to be driven in a semi-tractor trailer from Mission, Texas to locations throughout Illinois and Indiana. ECF No. 77 at 5. Defendant was involved in transporting between 50 and 150 kilograms of cocaine a week. *Id*. Defendant owned a trucking company in Texas and used its semi-tractors to transport the drugs.

In June 2014, DEA agents seized 49 kilograms of cocaine from a tractor trailer as Defendant and his associate were driving. *Id*. The plan was for Defendant to drop off a legitimate shipment before meeting with other coconspirators who would disassemble a hidden compartment, unload the cocaine, and load approximately one-million dollars in United States currency into the compartment ECF. No. 60 at 9–10. Defendant was planning

1

to then pickup up another legitimate shipment to drive back to Texas before finally dropping the trailer off at a specified residence. The plea agreement reflects that 49 kilograms of cocaine had a wholesale value of more than $1 million and a street value of more than $4 million. ECF No. 60 at 10.

Defendant and others were charged with conspiracy to possess more than five kilograms of cocaine with intent to distribute it. The amount of cocaine attributable to Garcia was approximately 5,349 kilograms of cocaine. Defendant also had two prior drug convictions. If the Government filed notices of both drug convictions, then Defendant could have been facing a mandatory life sentence, but the Government only filed a notice regarding one of the prior offenses. ECF No. 77 at 17. In the Presentence Investigation Report, Defendant's guideline range was calculated as being 324 months to 405 months. *Id*. Defendant pleaded guilty, and on November 9, 2015, the Court sentenced Garcia to serve 194 months imprisonment, pursuant to a plea agreement.

Defendant is serving his 194-month sentence in the federal Bureau of Prisons ("BOP"), and the parties agree that his projected release date is July 15, 2028. Defendant represents that he is housed at a minimum-security camp attached to USP Atlanta and that he works as an orderly. Defendant further represents that he and other orderlies are permitted to drive themselves to the BOP Regional office located 12 miles away, work their shift, and drive back without a guard to accompany them. The Government does not appear to dispute these representations.

Defendant first filed a *pro se* motion for a reduced sentence pursuant to the First Step Act on April 12, 2020. ECF No. 95. The Court appointed the Federal Public Defender to represent Defendant. d/e 04/27/2020. On May 13, 2020, the Federal Public Defender

filed an Amended Motion for Compassionate Release, which the Government opposed. ECF No. 98. The Court held a hearing and denied the motion during that hearing. d/e 05/28/2020. Defendant filed another *pro se* motion for a reduced sentence on February 22, 2021. ECF No. 100. The Court again appointed the Federal Public Defender to represent Defendant. d/e/ 02/23/2021. The Federal Public Defender filed an Amended Motion March 10, 2021. The Government filed a response again opposing the request. ECF. No. 103. This Order follows.

## Legal Standard

Before filing a motion for compassionate release, a defendant is required to first request that the BOP file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission, however, has not updated its policy statements since the First Step Act came into effect. Prior to the passage of the First Step Act, federal judges were only able to release prisoners for compassionate release reasons upon motion by the BOP. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The First Step Act gave judges the power to grant

3

compassionate release on a prisoner's own motion provided that the prisoner first allowed the BOP to review the request and make a recommendation or thirty days had passed since the prisoner submitted his or her request to the BOP. *Id*. In *Gunn*, the Seventh Circuit determined that the most recent policy statements from the Sentencing Commission do not apply to prisoner-initiated motions because the guidelines only address those motions that were brought pursuant to a BOP motion. *Id*. at 1180. Accordingly, the Seventh Circuit held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement." *Id*. This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id*. at 1181.

Despite the Seventh Circuit clarifying that courts are not bound by the Sentencing Commission's guidelines regarding compassionate release when an inmate brings the motion, the Seventh Circuit strongly suggested that those guidelines are still relevant to district courts' decisions. The Seventh Circuit explained that the guidelines provide a "working definition of 'extraordinary and compelling reasons'" and cautioned that a judge who "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*. at 1180. "In this way the Commission's analysis can guide discretion without being conclusive." *Id*. The Seventh Circuit further stated that it would "expect" district judges to give the BOP Director's analysis regarding the prisoner's request "substantial weight, even though under the First Step Act the Director's views are not controlling." *Id*. Based on the available guidance from the Seventh Circuit, this Court will give great weight to the Sentencing Guidelines regarding motions for compassionate

4

release even though they are not binding in this case. Finally, this Court is disinclined to grant a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

## Discussion

In his Amended Motion, Defendant essentially argues that his serious and chronic medical conditions and the COVID-19 pandemic constitute extraordinary and compelling reasons to grant compassionate release and that this Court should exercise its independent authority to reduce his sentence based on his record in the BOP. ECF No. 102. The Government urges the Court to deny his Amended Motion because he has not demonstrated extraordinary and compelling reasons justifying release and the § 3553(a) factors do not support a sentence reduction. ECF No. 103.

Defendant claims that he exhausted his administrative remedies before filing a motion for compassionate release, and the Government does not disagree. ECF No. 103 at 18. Accordingly, the Court will address the merits of this motion.

## I.      Eligibility for Compassionate Release

Defendant is thirty-eight years old, obese, and has asthma that requires him to use a rescue inhaler. The CDC recognizes an increased risk of severe illness from the virus among obese adults. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb.8, 2021). Additionally, the CDC found that moderate to severe asthma might increase the likelihood of serious illness. *Id.* In addition to citing potential health risks, Defendant further argues that he does not have any control over his surroundings, making it impossible

for him to follow the CDC guidelines on protecting himself from the virus. Accordingly, Defendant argues that the COVID-19 pandemic and his medical conditions constitute extraordinary and compelling reasons for compassionate release. While Defendant acknowledges that he refused the vaccine, he claims that his skepticism regarding the vaccine is shared by much of the country.

The Government asserts that Defendant has not established extraordinary and compelling reasons for a reduced sentence within the meaning of § 3582(c)(1)(A). While the Government acknowledges that obesity may qualify as an extraordinary condition qualifying an inmate for consideration for compassionate release due to the COVID-19 pandemic, the Government argues that Defendant's refusal of a vaccine means his health concerns no longer qualify as an extraordinary circumstance. Courts across the country appear to have consistently ruled that an inmate's refusal of a COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstance to justify relief. *See United States v. Lohmeier*, No. 12 CR 1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 03, 2021) ("In declining vaccination (twice), [Defendant] declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); *United States v. Williams*, No. CR 1701279001, 2021 WL 321904, at *3 (D. Ariz. Feb. 1, 2021) ("Defendant's own behavior [in refusing vaccination] is inconsistent with his position that he believes he is at increased risk from the virus."); *United States v. Gonzalez Zambrano*, No. 18-CR-2002, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release. It would be paradoxical to

endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them."); *United States v. Baeza-Vargas*, 2021 BL 125472, 3 (D. Ariz. Apr. 05, 2021) (collecting cases). Indeed, while Defendant is not obligated to take the vaccine, it is inconsistent for him to both claim fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk.

Moreover, there are currently 10 inmates with active infections, which is down from the 30 active infections that Defendant cited in his motion filed in March. *COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Apr. 15, 2021). There are also now 458 inmates, and 198 staff members that are fully inoculated. *Id*. With cases down and vaccinations up, it appears that the pandemic issues are waning in this facility.

## II.    Applicable § 3553(a) Factors Do Not Support a Sentence Reduction

Defendant argues that the § 3553(a) factors weigh in favor of compassionate release and that his punishment was excessive. However, as noted above, Defendant's sentence fell substantially below the guideline range. He was also responsible for large quantities of drugs, trucking thousands of kilograms of cocaine into the Illinois and Indiana. *See* ECF No. 60 at 10; ECF No. 77 at 21. Despite facing up to life in prison and a guideline from 324 months to 405 months, Defendant was sentenced to 194 months, well below the initially calculated guideline range.

Defendant has approximately seven years remaining on his sentence and was involved in a serious crime over a long period of time. As a result, the Court finds that a reduction would not reflect the seriousness of his offenses, promote respect for the law,

provide just punishment, and afford adequate deterrence to others. Therefore, even if Defendant had successfully demonstrated extraordinary and compelling reasons for a reduced sentence, this Court finds that a reduction would be unwarranted under § 3553(a) factors.

### III.     Rehabilitative efforts

Defendant also argues that he is in a minimum-security facility and is trusted to travel from the prison unaccompanied. He also notes that he has not had any disciplinary issues. This Court commends Defendant for his good conduct, but rehabilitation alone does not constitute an extraordinary and compelling reason for a sentence reduction. Congress directed the Sentencing Commission to adopt policy statements regarding "the appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C). Providing further guidance, § 994(t) states:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

This Court finds that none of Defendant's proffered reasons regarding his good conduct are "extraordinary and compelling" under § 3582(c)(1)(A)(i).

### <u>Conclusion</u>

For the reasons stated above, Defendant's Second Amended Motion for Compassionate Release [102] and his *pro se* Motion [100] are DENIED.

ENTERED this 16th day of April, 2021.

s/ Michael M. Mihm
Michael M. Mihm
United States District Court Judge

8